## SCOTT COUNTY *vs.* HENRY HINDS.

Submitted on briefs May 13, 1892.   Decided June 15, 1892.

**Tax Assessment—Omission of Equalization.**

Under the provisions of 1878 G. S. ch. 11, § 79, an omission to have an assessment of real property revised and equalized by the county board will not affect or invalidate the taxes upon such property, in the absence of any claim by the owner that the omission has resulted to his prejudice, and that the taxes against the property have been partially, unfairly, or unequally assessed.

**Wrong Name of a Special Assessment will not Invalidate it.**

The legality of a special assessment against certain city lots for expense of constructing sidewalks in front of the same is not affected by the fact that in the tax list the amount of the assessment against each lot appeared in a column headed "Delinquent Road Tax," in the absence of any claim by the owner of the lots that he had been misled or prejudiced by the alleged error in the heading.

**Shakopee City Charter Construed.**

By one of the provisions of a city charter the expense of constructing sidewalks, where the owners of the adjoining property had failed to build after due notice, was directed to be assessed against the "lots and parcels of land adjoining said sidewalks." *Held*, that this language is equivalent to that found in section 1, art. 9, of the state constitution, which authorizes and provides that such assessments may be made "upon the property fronting upon such improvements."

**Directing Sidewalk Built at the Expense of the Lot.**

With such a charter provision it was unnecessary for the city council, when directing that the walks be constructed, the lot owners having failed to build, to specially direct that such construction should be "at the expense of the" lots adjoining the walks.

**What Property Chargeable with the Expense.**

Where a sidewalk is built in front of a part only of a single tract of land, such as a city lot owned by one person, the cost of construction is a proper charge against the entire tract.

**Practical Frontage, the Test.**

In determining, for the purposes of a special assessment, what property fronts upon a sidewalk, practical frontage is not the test; the officials must be guided by the plats and records.

**Special Assessments.**

> Other points in regard to a special assessment to cover the expense of constructing sidewalks disposed of.

Statement made to this court by the District Court of Scott County, *Cadwell*, J., under 1878 G. S. ch. 11, § 80, upon the application of Henry Hinds.

On January 13, 1892, the District Court decided against Mr. Hinds, the points raised by his answer, as to the legality of certain general taxes and sidewalk assessments for 1889, upon town lots owned by him in the city of Shakopee in Scott county. On March 25, 1892, the court on his application made a brief statement of the facts established, bearing upon the points raised, and of its decision of them, and transmitted it to this court. The matters in controversy are fully stated in the opinion.

*Chas. G. Hinds*, for the tax debtor.

*Julius A. Coller*, County Attorney, and *E. Southworth*, for the State.

COLLINS, J. These proceedings involve the legality of certain general taxes and special assessments, for sidewalks, for the year 1889, upon lots owned by defendant in the city of Shakopee, and have been transmitted to this court under the provisions of 1878 G. S. ch. 11, § 80. The points which are thus presented will be considered *seriatim*.

1. The city charter is found in Sp. Laws 1875, ch. 6. It is provided in subchapter 3, § 9, that the assessment roll shall be returned by the assessor to the common council for revision and equalization, and the assessment, as so revised and equalized, is made final, except as it may be reviewed by the state board of equalization. The court below held that this provision was repealed in the general tax law, (chapter 11, *supra*, § 120,) and because of such repeal the assessment roll for the year in question should have been considered and equalized by the county board. This was not done, but the court further held that this omission to have the assessment of property in the city revised and equalized by the county board did not affect or invalidate the taxes in question, in the absence of any claim by defendant that such omission had resulted to his prejudice,

and that the taxes against these lots, or some part thereof, had been partially, unfairly, or unequally assessed, attention being called to section 79, ch. 11, *supra*. No opinion need be expressed in respect to the conclusion of the trial court as to the repeal of section 9, subc. 3, of the charter, for the court was clearly right when holding that the omission, if there was an omission, was no objection or defense, without a further showing that defendant had been prejudiced by a partial, an unfair, or an unequal assessment of taxes upon his property. The whole matter is properly covered and regulated in section .79. The views of this court as to the necessity of action by the county board of equalization, as set forth in *Board of Com'rs of Dakota Co.* v. *Parker*, 7 Minn. 267, (Gil. 207,) have no pertinency with the present statute.

2. In the tax list, as made out by the county auditor, and, presumably, as filed by him with the treasurer, taxes were extended against each of these lots under the heading "General Tax" and also under the heading "Delinquent Road Tax." There was no road tax, strictly speaking, against the property for the year 1889, and, as a matter of fact, the amounts extended as taxes under the last-mentioned heading were the amounts of the assessments for the construction of sidewalks in front of the lots, with a certain percentage penalty added, authorized by the charter, but uncollectible, as admitted by all parties, and as held by the trial court when ordering judgment. It was held below that as the defendant did not claim in his answer, and made no attempt to prove, that he had been misled or prejudiced by the mistake, if it was one, the right to recover for the amounts properly due was not affected. We presume that under section 50 it would have been advisable for the auditor to have erased from the printed form of the tax list, as furnished, the words "Delinquent Road Tax," and to have inserted others which would have more clearly indicated the nature of the item, although a sidewalk is an improvement of a road or public way, is a part of it, and when constructed by the municipality, on the failure of the landowner to build, the cost thereof becomes a delinquent tax to all intents and purposes, collected by means of a special assessment. To illustrate, the auditor could have substituted the words "sidewalk assessment," and, as

we understand it, the item did thus appear in the delinquent list. The amounts of the special tax assessed for building the sidewalks were entered in a separate column, and the mistake in the heading thereof was an irregularity which did not mislead the defendant or vitiate the proceedings.

3. The point is urged that the charter provision (subchapter 8, § 3) is unconstitutional, because it is directed therein that the expense of building such walks as the landowners fail to build, after notice, shall be assessed against "lots and parcels of land adjoining said sidewalks," instead of directing that the expense shall be assessed "upon the property fronting upon such improvement," that being the exact language of the constitution, art. 9, § 1. It was unnecessary to use the precise words of the constitution in the charter, as everybody ought to know, and the words "adjoining" and "lots or parcels of land," as used in the last-mentioned instrument, mean the same thing as the words "fronting" and "property" would had they been used instead. The lots in question front upon the walks, and consequently they must adjoin; that is, be contiguous,—in contact with the walks. A sidewalk built under the direction of corporate authorities must necessarily be in the street, and hence in front of the lot or parcel of land which happens to adjoin it, and no one would or could construe the word "adjoining," as found in the charter, as having a meaning different from the word "fronting," as that word is used in the fundamental law. So with the word "property," which means, of course, real property,—the real property in front of which the sidewalk is constructed,—and this must necessarily be the adjoining lots or parcels of land. The court below was right when deciding adversely to defendant on this point.

4. The fifth point made by defendant is fully covered by the case of *State* v. *Smith*, 22 Minn, 218, and the sixth point may be disposed of by calling attention to *Wells* v. *Atkinson*, 24 Minn. 161; *Parker* v. *Branch*, 42 Minn. 155, (43 N. W. Rep. 907.)

5. The charter (subchapter 8, § 3) provides that, if sidewalks are not built within the prescribed period of time after notice, the city council may order the same to be done "at the expense of the lots" adjoining. The facts were that, soon after the expiration of the time

fixed by the notice, the council, by a duly adopted resolution, directed the city recorder to advertise for bids to furnish the material and construct the walks, and this was done. This was a sufficient compliance with the charter provision. There is nothing in the point that the council should have directed that the walks be built "at the expense of the" adjoining lots, for this was expressly directed in the charter, and the council had no discretion in the matter. The council could not relieve the property fronting on the walk from the burden, even if it so desired, and its direction, one way or the other, was needless.

6. The city council did not make a valid assessment for the expense of building the walks in the year 1888, although an attempt so to do was made. The proceedings were abandoned as unauthorized. Therefore the claim that an assessment could not be legally made in 1889, because the council had previously exhausted its power, falls to the ground.

7. One of the lots had a frontage of one hundred and forty-two (142) feet on Louis street, and the walk was not built along the entire front, but for only 80 feet thereby. Defendant objected to an assessment upon the lot, as a whole, insisting that the expense of building the eighty (80) feet must be charged up to that part of the lot which fronted on the same. This lot was a single parcel of land owned by one person. The defendant fails to suggest how the cost of building the sidewalk in front of a part could be collected except by an assessment against the whole, although it is not improbable that with a proper showing it might be done. While it is true that the entire frontage has not been covered, it is evident that there was no power or authority vested in any of the city or county officers to split up and divide the tract in question, for assessment purposes. In fact, had this been attempted, as the case stood, a substantial cause for objection to these proceedings would have been afforded to defendant.

8. Defendant also contended that a part of lot nine, (9,) in block thirty, (30,) did not front on the walk, which was built on the north end of it. The lot was sixty (60) feet in width, and one hundred and forty-two (142) feet deep, to an alley. Easterly and westerly across

this lot a railway had been built in the year 1872, and to the railway company defendant had then conveyed "the right of way for its railroad over and upon" a strip of land sixty-six (66) feet wide. About one fifth of the entire lot lay north, and about three eighths south, of this right of way, but the lot had always been treated for assessment purposes as one tract of land, including the strip sixty-six (66) feet in width, the right conveyed to the company being a mere easement for railway purposes. Granting the right of way across the lot did not separate it into distinct parcels for tax purposes any more than for the purposes of sale and conveyance. It still remained lot nine, (9,) and it is of no consequence that, practically, that part southerly of the conveyed strip, fronted westerly. Practical frontage is not the test. The officials are and must be guided by the plats and records, and defendant seems to have been satisfied with this course until he resisted the collection of taxes in these proceedings.

Judgment affirmed.