CASE 57—PETITION EQUITY—APRIL 18.

# Dumesnil, &c v. Shanks, &c.

APPEAL FROM JEFFERSON CIRCUIT COURT, LAW AND EQUITY DIVISION.

1. ASSESSMENTS FOR STREET IMPROVEMENTS.—In apportioning the cost of street improvements in the interior of a square the general rule is that the cost must be borne by all the property owners within the four quarters of the square; and under this rule the word "square" is ordinarily construed as meaning any subdivision of territory surrounded on all sides by principal streets. But there are exceptions to this rule, and this definition of the word "square" is not of universal application. Each case must be largely considered and disposed of upon its own peculiar facts, one of the cardinal and controlling considerations underlying the whole question being based upon the idea that the property benefited by the improvement should bear the expense.

In this case the improved alley lies within that subdivision of territory in the city of Louisville bounded on the east by Fourth street, on the north by Ormsby avenue, on the west by Sixth street and on the south by Park avenue. The alley begins at Park avenue, two hundred feet east of Fourth street, and runs north two hundred and sixty feet. The distance from Park avenue to Ormsby avenue is four hundred and sixty feet and from Fourth street to Sixth street is nine hundred feet. The length of this territory from east to west is about double that of the squares on the north side of Ormsby avenue, arising from the fact that Fifth street, which runs half way between and parallel with Fourth and Sixth streets up to the north side of Ormsby avenue, stops there. Held, That the cost of the improvement of the alley should be apportioned over the property

lying east of a line corresponding with the center of Fifth street, if extended.

2. SAME.—While this court has held that where the alley improved lies wholly within one of the quarter squares the other three-quarters can not be required to pay any part of the cost, thus establishing an exception to the general rule, it does not follow that in every case where it lies wholly within two-quarters of the square those two-quarters alone must pay for it.

GRUBBS AND MORANCY FOR APPELLANTS.

The quarter square is the taxing district; and each quarter square should pay for so much of the improvement as binds upon it and no more. (Cooper v. Nevin, 90 Ky., 85; Boone v. Nevin, 15 Ky. Law Rep., 547; Schmelz v. Giles, 12 Bush, 494; Washle v. Nehan, MS. Op. (97 Ky., 351); Meyer v. Zell, 14 Ky. Law Rep., 816; Zable v. Connelly, 6 Ky. Law Rep., 309; Shadburn v. Connelly, 6 Ky. Law Rep., 600.)

LANE & BURNETT FOR APPELLEES.

When the way as improved is located wholly within one of the quarters of the square, that quarter is alone chargeable with the cost of the improvement. When the way as improved is located in more than one of the quarters of the square the whole square is liable, and nothing less than the square is chargeable. (Connelly v. Zable, 6 Ky. Law Rep., 309; Connelly v. Shadburn, 6 Ky., Law Rep., 600; Meyer v. Zell, 14 Ky., Law Rep., 816; Washle v. Nehan, Burnetts' Code, 756 (97 Ky., 351); Schmelz v. Giles, 12 Bush, 491.)

JUDGE EASTIN DELIVERED THE OPINION OF THE COURT.

The only question to be considered on this appeal is whether or not appellants have been properly assessed with a portion of the cost of improving a certain alley in the city of Louisville. As has been the case in most of the controversies of this nature, the question is not free from difficulty, and, as has been done in most of the other cases involving similar questions, this case must be largely considered and disposed of upon its own peculiar facts.

The alley in question here lies within that subdivision of

territory, called and considered by the court below a "square," which is bounded on the east by Fourth street, on the north by Ormsby avenue, on the west by Sixth street, and on the south by Park avenue, and beginning at the north line of Park avenue, at a point two hundred feet east of Fourth street, runs northwardly a little more than half way to Ormsby avenue, or to be more accurate, to a point thirty feet north of a line drawn mid-way between Park avenue and Ormsby avenue, and there opens into or unites with another alley running eastwardly to Fourth street.

The distance from Ormsby to Park avenue is about four hundred and sixty feet, and from Fourth to Sixth street is about nine hundred feet, and, as said above, this subdivision of territory was treated, both by the city engineer and by the court below, as a square for the purpose of paying for this improvement and, being divided into four equal parts or quarters, the cost of this alley was apportioned and assessed against the property embraced in each of these quarter squares equally, according to the number of square feet of ground in each.   While there is no street running north and south through this territory between Fourth and Sixth streets, thus leaving it of the depth of nine hundred feet, yet it is admitted that the territory on the north side of Ormsby avenue between these last-named streets is traversed by a principal street sixty feet wide, known as Fifth street or Garvin Place, which runs into and stops at Ormsby avenue mid-way between Fourth and Sixth streets, and which, if extended, would divide the square under consideration into two squares about equal in depth back from Fourth and Sixth streets respectively, to the squares north of Ormsby avenue.

The plat, which forms a part of the record, shows that the alley lies almost wholly within one of these quarter squares

—the south-eastwardly one—only extending to the distance of about thirty feet into the nort-eastwardly quarter square, and not touching or binding upon any part of the ground within the north-westwardly or south-westwardly quarter square, but being distant, at its nearest point, more than two hundred feet from either of these two last-named quarter squares. It further shows that the property assessed on the east side of the alley, running back to Fourth street, has a depth of two hundred feet, while that assessed on the west side, running back to Sixth street, has a depth of about seven hundred feet, and that the center line running through this square north and south, for the purpose of dividing it into quarters, is just about the same distance west of the alley as Fourth street, the eastern boundary of the square, is east of it.  So that about three-fourths of the ground assessed lies on the west side of the alley and one-fourth on the east side, and all the ground in the two westwardly quarters is entirely separated and cut off from the alley by the intervention of about one-half in width of the two eastwardly quarters.

The court below sustained the apportionment made by the city engineer, assessing the cost equally upon all the ground embraced in the four quarter squares as above designated, and sustained a demurrer to the answer, and adjudged that appellants, who are the owners of the ground lying within the two westwardly quarters, pay the proportion assessed against their lots, from which judgment they prosecute this appeal. Were the appellants properly charged with any part of this improvement, or can any part of its cost be legally assessed against the property in these two westwardly quarter squares?

It is manifest that the court below has been guided by the rule laid down by the charter and generally recognized by

the courts, that the costs of these improvements in the interior of a square must be borne by all the property within the four quarters of the square, and by that definition of the word "square" which ordinarily construes it as meaning any subdivision of territory surrounded on all sides by principal streets.

But, is this rule inexorable and iron-bound in all cases, and is this definition of universal application? We certainly think not.

In the case of Washle v. Nehan, MS. opinion, Oct. 13, 1881 [97 Ky., 351], this court held that, when the alley improved lies wholly within one of the quarter squares, the other three quarters can not be required to pay any part thereof, clearly establishing an exception to the rule. And while we can not adopt the reasoning of counsel for appellants, who argue that, if this be the case where the improvement lies within one quarter, it must also follow that where it lies wholly within two quarters of the square, those two quarters alone must pay for it, yet it shows that one of the cardinal and controlling considerations underlying this whole question is based on the idea that the property benefited by the improvement should bear the expense of it, and that the decision in each case must be governed to some extent by the facts of that case. Nowhere is this made to appear more clearly than in the very case relied upon by counsel for appellee to show that, although the alley improved may lie wholly within two of the quarter squares, yet the cost must be apportioned over all of the four quarter squares.

In the case of Schmelz v. Giles, 12 Bush, 491, this court said: "It was the intention of the legislature that each improvement should be made at the cost of each contiguous fourth of a square. The reason for such a rule of assessment is obvious. The effect of its operation is to charge the

cost upon the property which is most benefited by the improvement, and which ought, therefore, in justice, to pay for it. The same principle, we think, not only can but ought to be applied in making assessments for improvements in the interior of the square. The contiguous property is most benefited by the improvement of an alley, and should pay for it, for the same reason that the contiguous property is charged with improving a street."

In that case the alley ran entirely through the square, but did not divide it into equal parts, being about eighty feet closer to the nearest parallel street on the north than to the nearest parallel street on the south. But a most important fact in that case was that although this alley ran for its whole length through only two of the quarter squares, yet every one of the lots in the other two quarter squares, and which fronted on the parallel street from which the alley was more distant, ran back to and abutted on this alley. There they did lie contiguous to the improvement and were benefited by it, and the court properly said in that case that it was just and legal to assess for the cost of that alley back to the parallel streets on either side, although this made one side pay more than the other, for as there was more property abutting on the improvement on that side and which was benefited by it, the owners on that side could afford to pay more.

We can not, therefore, agree with counsel for appellants in their contention that in no case where the improvement lies wholly within two of the quarter squares should the other two be made to contribute towards paying the cost. As seen from the case of Schmelz v. Giles, *supra*, it may be eminently just that they should contribute in some instances, as is forcibly illustrated by that case. But the basis of that decision is to a great extent, that the property in all four of

the quarters were equally benefited and, therefore, as said above, the facts in the particular case under consideration must to some extent control the decision of the case.

As we have seen from the decision in Washle v. Nehan, *supra*, that there is at least one exception to the rule requiring the costs of these improvements to be apportioned over the whole of the four quarters of the square, so also has this court recognized the fact that the definition of the word "square," which would make it mean every subdivision of territory bounded on all sides by principal streets, is in some cases subject to modifications and exceptions.

It is insisted by counsel for appellants that the subdivision of territory under consideration here is not a square, but is in reality two squares, and it does appear to be a fact that it is in extent about equal to two of the ordinary squares on the north side of Ormsby avenue, or at least that its length from east to west is about double that of the squares on the opposite side of that avenue, and that this arises from the fact that Fifth street, which runs half way between and parallel with Fourth and Sixth streets up to the north side of Ormsby avenue, stops there, and does not therefore divide this territory between Fourth and Sixth streets on the south side of Ormsby avenue as it does on the north side. This explains the anomaly of having Sixth street the next street west of Fourth street at this point, and also explains why this square is double the size of those on the opposite side of the street.

Is this, then, to be considered a square, within the meaning and spirit of that provision of the charter of the city of Louisville which requires the cost of these improvements to be assessed upon all the property embraced in the square within which they are located?

In support of this proposition counsel for appellees relies

upon the case of Nevin, &c. v. Roach, &c., 86 Ky., 492, and it is true that in that case this court upheld and enforced an assessment for improving Chestnut street against the property on the north side thereof, half way back to Walnut street, treating this as a square, although it was much larger than the ordinary square, or than the square on the south side of the improvement, and although another street between Chestnut and Walnut streets was, in fact, dedicated and opened after the ordinance authorizing the improvement of Chestnut street was enacted. But in that case this court expressly held that not every subdivision of territory surrounded by principal streets is a square within the meaning of the charter, and said:

"The square might be of such dimensions as to authorize the conclusion that it was never contemplated that a territory embracing so much land in one square should be deemed a square within the meaning of the law. Such is not the case here."

In that case the square was about seven hundred and forty feet deep, while in this it is, as we have seen, nine hundred feet deep, from east to west, and the court in that opinion has clearly reserved to itself the right of determining both the materiality and the effect of such an increase of dimensions.

And, again, in the case of Cooper v. Nevin, 90 Ky., 85, in which the square on one side of the improvement was considerably larger than on the other, and in which this court sustained the assessment to a greater depth on one side than the other, it is said: "Each subdivision of territory bounded on all sides by principal streets is ordinarily deemed a square, and such is the provision of the city charter; still the territory between the streets may be of such dimensions, covering a large area, as would show not only

the necessity, but the certainty, that such an area must at some time be subdivided into squares for public convenience, and, therefore, the city council, in ordering the improvement, will only extend the taxing district as far into the territory that is liable to this subdivision as that taxed on the opposite side of the improvement, where the territory has already been defined by squares surrounded by principal streets, as contemplated by the charter."

Although we fully recognize now, as the court did in that case, the importance of establishing, as far as practicable, and of adhering to, some fixed rule on this subject, even though it may result in hardship in individual cases, yet we are of opinion now, as we were then, that justice demands in some cases that we exercise some discretion in determining what territory is embraced in a square within the meaning of the charter.

In the case before us the square assessed is just double in size the squares on the opposite side of the street, which are of the ordinary dimensions.    The square extends from Fourth to Sixth street, with Fifth street opened from the north, but stopping at the northern boundary of this property; and, if extended on southwardly, it would divide this square into two squares of the ordinary size.

The palpable injustice and the gross inequality resulting from this assessment here are so glaring as to emphasize the importance of giving some elasticity to the general rules which we recognize as governing these matters.    That this property in the two westwardly quarter squares here can derive no benefit whatever from this improvement, one-half the cost of which it is required to pay, is perfectly apparent. Not only is the whole improvement within the other two quarter squares, but it is in the middle of them, and at a distance from the nearest line of the two western quarter

squares equal to the entire depth to which the property east of the improvement is assessed, and three and a half times that distance from their furthest line.   We can not give our sanction to such an injustice.

By apportioning the cost of this alley over the property lying east of a line corresponding with the center of Fifth street, if extended, and which seems to be the center line, running north and south, of the square, a nearer approach to equality will be attained, and the property receiving the benefits be required to pay more nearly its share of the cost, and substantial justice be done.

Wherefore the judgment of the lower court is reversed, and this cause remanded with direction to overrule the demurrer to the answer, and for further proceedings consistent with this opinion.

To a petition for rehearing filed by counsel for appellees, Chief Justice Pryor delivered the following response of the court:

Counsel seems to have misconceived the effect of the opinion in this case.   We are not disposed to alter the mode of apportioning the cost of such improvements, but on the contrary to adhere to the well-established doctrine on the subject.   In the case of Schmelz v. Giles, 12 Bush, 491, the alley improved was so connected with the whole of the lots in the square that every lot bordered upon it.  In the case of Washle v. Nehan, MS. opinion [97 Ky., 351], this court made the same ruling in substance that has been made in this case.

It appears also that the plat of the territory composing that part of the city in which this alley is located indicates clearly the property liable for the cost of this alley.   Fifth street stops on the north side of Ormsby avenue, and if extended would divide this square so as to place the burden

where the principal opinion says it belongs, and makes that part of the square deriving the sole benefit of the improvement liable to pay for it. This alley does not in fact extend from the one street to the other, and is unlike the case of Schmelz v. Giles, where all the lots have access to it.

Petition overruled.